UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICIA LOPEZ,

    Plaintiff,

v.                                                                              Case No. 18-C-1206

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

**DECISION AND ORDER**

Plaintiff Patricia Lopez filed this action for judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Lopez contends that the decision of the administrative law judge (ALJ), which became final after the Appeals Council denied review, R. 1, failed to adequately evaluate her testimony about her pain. For the reasons provided below, the Commissioner's decision will be reversed and remanded.

**BACKGROUND**

Lopez filed applications for DIB and SSI in June 2015, alleging disability beginning in April 2010 due to lupus, major depression/anxiety, post-traumatic stress disorder (PTSD), fibromyalgia, asthma, and rheumatoid arthritis. R. 271, 278, 335. She later amended her alleged onset date to January 18, 2012. R. 317. After Lopez's applications were denied initially and upon reconsideration, she requested a hearing before an ALJ. R. 105–06, 133–34, 206. ALJ Thomas Auble conducted a hearing on August 22, 2017, at which Lopez, who was represented by counsel, and a vocational expert (VE) testified. R. 32–58.

At the time of the hearing, Lopez was forty-five years old and had recently quit her part-time cashiering job on August 5, 2017. R. 37–38. She had been working twenty-five to thirty hours per week for a little over a year. R. 41–42. She testified that she quit because she did not have a doctor's excuse for her absence and because she was experiencing anxiety attacks. R. 42. She testified that cold weather, and sometimes hot weather, triggered lupus flare-ups, which caused her to miss work, sometimes up to two weeks in the winter. R. 42–43. Lopez also testified that she suffers from rheumatoid arthritis, osteoarthritis, and fibromyalgia and that her arthritis flares up in cold temperatures along with her lupus flare-ups, which interferes with her ability to walk. R. 43–44. She estimates that she experiences flare-ups two to three times per month on average, with more occurring in the winter. R. 44. She takes medication for her lupus and uses marijuana to treat her pain. R. 45, 50–51.

Apart from her cashiering job, Lopez previously worked as a personal care worker beginning in 2003, which required occasional lifting of over fifty pounds and a mixture of standing and sitting. R. 39–40. Regarding daily living, Lopez testified that, on a good day, she is able to attend to her personal care, clean the house, cook, and do laundry, taking breaks as needed. R. 48–49. She testified that she is always on the move, as she can neither stand nor sit for more than five minutes without experiencing pain. R. 49–50. She also testified that she experiences hand cramps once or twice per week for two to three minutes and recurrent migraines that come back every two months, occur three times per week, and can last all day. R. 50, 52–54. She further testified that she sees a psychiatrist and a therapist and takes medications to treat her mental health conditions, such as anxiety. R. 51. She testified that she sometimes has trouble with concentration and memory. R. 52.

In a written decision dated October 2, 2017, the ALJ concluded that Lopez was not disabled within the meaning of the Social Security Act from her amended alleged onset date of January 18,

2012 through the date of the decision. R. 24. To arrive at this conclusion, the ALJ followed the Social Security Administration's (SSA's) five-step sequential evaluation process. At step one, the ALJ determined that Lopez had not engaged in substantial gainful activity since January 18, 2012. R. 16. At step two, the ALJ found that Lopez had the following severe impairments: right ankle osteoarthritis status post arthroscopy and debridement, fibromyalgia, gout, rheumatoid arthritis, lupus, migraines, obesity, asthma, major depression, anxiety disorder, PTSD, and cannabis dependence. R. 17. At step three, the ALJ determined that Lopez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After reviewing the record as a whole, the ALJ determined that Lopez had the residual functional capacity (RFC) to

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, and occasionally balance, stoop, kneel, crouch, and crawl. She can have no exposure to excessive vibration, unprotected heights, hazardous machinery, or irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She is limited to simple, routine tasks. She can work only in a low stress job, defined as having only occasional decision making and only occasional changes in work setting. She cannot work with a production quota, meaning no strict production standard and no rigid production pace.

R. 19. At step four, the ALJ determined that Lopez was unable to perform any past relevant work. R. 23. At step five, the ALJ determined that there existed jobs in the national economy in significant numbers that Lopez could perform, such as cleaner (light), cashier (light), and usher/ticker-taker (light). R. 23–24. Based on these findings, the ALJ concluded that Lopez was not disabled under the Social Security Act. R. 24. After the ALJ's decision became final, Lopez commenced this action for judicial review.

3

## LEGAL STANDARD

The Commissioner's decision will be upheld if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Lopez raises one issue for review: whether the ALJ properly evaluated her subjective testimony regarding her pain. The regulations set forth a two-step process for evaluating a claimant's subjective reports of symptoms, including pain. 20 C.F.R. § 404.1529; *see also* SSR 16–3p. First, the ALJ determines whether the claimant has a medically determinable impairment

4

(MDI) that could reasonably be expected to produce the pain or other symptoms alleged. § 404.1529(a). Second, if the claimant has such an MDI, the ALJ evaluates the intensity and persistence of the claimant's symptoms and determines the extent to which those symptoms limit the claimant's capacity to work. § 404.1529(c).

On review, an ALJ's credibility finding is entitled to great deference and will be overturned only if it is "patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 815–16 (7th Cir. 2014) (citing *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (citation omitted). The ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p.

Lopez does not dispute that the ALJ properly completed step one of the procedure for evaluating her subjective complaints. R. 20. She does, however, contest the adequacy of the ALJ's discussion at step two. Specifically, Lopez argues that the ALJ erred in discounting her testimony because the ALJ ignored the fact that her severe conditions present themselves in the form of flare-ups. *See* R. 42–44. Her argument is not that she is unable to work at the level specified in the RFC; indeed, she acknowledges that at times she is able. Pl.'s Br., Dkt. No. 9 at 10. Rather, she argues that she cannot work at the given RFC on a continuous basis and would therefore be unable to sustain substantial gainful employment. *Id.*

Despite finding that Lopez's MDIs could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Lopez's "statements concerning the intensity, persistence and

5

limiting effects of these symptoms are not *entirely consistent* with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20 (emphasis added). The fact that the medical and other evidence was not "entirely consistent" with Lopez's statements, however, does not mean she was capable of full-time employment. What is lacking is any explanation or reference to the inconsistencies the ALJ appears to have had in mind.

In reaching the conclusion that Lopez was not disabled, the ALJ noted that Lopez reported having constant aches and pains that made it difficult to move and that she had inflammation due to fibromyalgia and rheumatoid arthritis. *Id.* The ALJ noted her reports of being able to maintain personal hygiene, cook, clean, perform housework, do laundry, and shop in stores for groceries or personal items. *Id.* The ALJ also considered Lopez's reported physical limitations, such as problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, and using her hands. *Id.* The ALJ further noted Lopez's testimony that she has lupus and will have flare-ups during cold weather and that her pain moves around her body from day to day. *Id.*

The ALJ discounted Lopez's subjective complaints of her symptoms because the record, specifically treatment records from April 2015, April 2016, and October 2016, "showed she had 5/5 strength, intact sensation, no swelling, and was able to ambulate following her surgery." R. 22 (citing R. 1390 ("Has recovered well from foot surgery, walking without cane."), 1374 ("Motor power is 5/5 bilaterally. Sensation and coordination are intact."), 448–49 (noting no swelling and that "[m]uscle strength is 5/5 in proximal muscles on all four extremities")). The ALJ also gave significant weight to the opinion of state agency medical consultant Dr. Robert Shaw, who opined in March 2016 that Lopez "will be at LIGHT RFC by surgery date + one year." R. 141. Dr. Shaw

6

noted that Lopez's surgery was performed in August 2015. *Id.* The ALJ failed to state, however, how this evidence warrants finding her complaints not credible, or to use the SSA's current terminology, not consistent. In other words, what is it about the findings concerning her strength, sensation, or swelling that demonstrates her complaints about pain are not believable?

While it is true that "an ALJ may discount an applicant's testimony if . . . other evidence in the record provides a basis for doing so," *Elder v. Berryhill*, No. 18-2664, __ F. App'x __, 2019 WL 2305519, at *3 (7th Cir. May 30, 2019), here, the ALJ cited to no evidence that discounted or conflicted with Lopez's testimony that she experienced debilitating flare-ups—more frequent and severe during cold weather, but also occurring in hot weather. R. 42–44. These flare-ups, she testified, caused her to miss up to two weeks of work over cold winter months and occurred, in her estimation, two to three times per month on average. R. 43–44. Given the VE's testimony that anything more than one unexcused absence per month would be work preclusive, R. 56–57, the ALJ was compelled to address the recurrent and sporadic nature of Lopez's symptoms as she reported them.

The ALJ's mere mention of treatment records showing "5/5 strength, intact sensation, no swelling," and an ability to "ambulate following her surgery," R. 22, is insufficient. The ALJ is required to build a logical bridge between the evidence and her conclusion that Lopez's testimony was not credible. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The ALJ failed to do so here. At best, the ALJ cited evidence that Lopez had the physical ability to work under the given RFC, but only at times. As previously noted, Lopez does not dispute such a capacity. The ALJ has failed to provide "specific reasons supported by the record" in support of her ability to work on a continuous basis in light of the flaring nature of her symptoms. *See Pepper v. Colvin*, 712 F.3d 351,

7

367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). Apart from noting Lopez's testimony that she has lupus and has flares during cold weather, R. 20, the ALJ did not further discuss the flaring nature of her symptoms.

Such an omission is especially important not only because, as previously noted, any number of unexcused absences beyond one per month would be work preclusive and Lopez testified that her flaring symptoms would result in absences exceeding this threshold, but also because there is evidence in the record supporting Lopez's reports of flaring symptoms. *See, e.g.*, R. 450, 1167, 1419. As recently as August 2017, the month of the administrative hearing, Dr. Salman Waheeduddin, the physician who had been treating Lopez's lupus, R. 44, stated in a letter, "Lopez is a patient of mine with systemic lupus erythematosus and frequent flares." R. 1419. Absent any explanation and evidentiary support for discounting the flaring (and perhaps, work-preclusive) nature of Lopez's self-reported symptoms, the ALJ's decision must be remanded to the agency for further proceedings.

The ALJ's reliance on Lopez's daily activities does not rectify this error. Although an ALJ may properly consider a claimant's daily activities when evaluating the intensity and persistence of a claimant's symptoms, § 404.1529(c)(3)(i), here, the ALJ's citation to Lopez's daily tasks as described in the hearing omitted the fact that Lopez described her capabilities "if it's a good day." R. 20, 48. The ability to perform certain daily activities on a good day says little about capabilities on bad days when symptoms are at their worst. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although the ALJ cites to evidence of daily activities elsewhere in the record,

8

such as Lopez's ability to do housework, the ALJ does not accompany these activities with their necessary caveats, such as her need to take "frequent breaks" or her receipt of assistance from others when performing chores. R. 20, 349–50; *see also Green v. Saul*, No. 19-1192, __ F. App'x __, 2019 WL 3297472, at *3 (7th Cir. July 23, 2019) (considering whether ALJ overstated claimant's ability to perform daily activities when reviewing ALJ's credibility determination).

Nor does the ALJ's reliance on Dr. Shaw's opinion hold sway. Dr. Shaw's opinion, dated March 2, 2016, was prospective in nature and reflected a prediction as to Lopez's capacity for light work a year after her surgery, about August 2016. R. 140–41. Not only is this opinion merely a prediction and therefore says little about Lopez's then-present capacity to work, but it also fails to account for the evidentiary gap for the two years preceding the ALJ's decision. Especially in light of Lopez's August 2017 hearing testimony and Dr. Waheeduddin's letter stating that Lopez has "frequent flares," reliance on Dr. Shaw's opinion is insufficient. At the very least, the ALJ could have contacted Dr. Waheeduddin to inquire about what was meant by "frequent" or obtained another (and more recent) medical opinion on Lopez's alleged flares and their impact, if any, on her capacity to work.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  26th  day of August, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court